UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PARADISE KIDS, LLC and MYRIAN
AGUERO,

         Plaintiffs,

   - against -

THE QUEEN'S TREASURES, INC., and
JOANN CARTIGLIA,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Case No. 15 Civ. _____

**COMPLAINT**

RECEIVED
MAR 27 2015
U.S.D.C. S.D. N.Y.

Plaintiffs Paradise Kids, LLC ("Paradise") and Myrian Aguero ("Aguero"), by their undersigned counsel, as and for their complaint against defendants, allege as follows:

1.    Plaintiffs bring this action to seek declaratory relief against defendants' baseless threats of litigation for alleged infringement of a copyright obtained by defendant The Queen's Treasures, Inc. ("QTI"), which Paradise has not infringed; for a declaration that Paradise's "18 Snack Stand" does not infringe any trade dress or trade mark in QTI's "Bake Shoppe" and accessories; to obtain a declaration that QTI's "Bake Shoppe" and accessories are unprotected under the Lanham Act and in any event not infringed; to obtain damages for defendants' assault and battery upon plaintiff Aguero; and to obtain damages for defendants' unfair competition with Paradise.

**PARTIES**

2.    Paradise is a Connecticut limited liability company. Its sole member is a citizen of Connecticut.

3.    Aguero is a citizen of Paraguay who is a permanent resident of New York.

4.      On information and belief, QTI is a Pennsylvania corporation with its principal place of business in Stroudsburg, Pennsylvania.

5.      On information and belief, Joann Cartiglia is a citizen of Pennsylvania and is the CEO of QTI.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter under 28 USC § 1331 because it is based on a claim under federal law, and under 28 USC § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

7.      Venue in this district is proper under 28 USC § 1391(b).

8.      This court has personal jurisdiction over the defendants pursuant to CPLR 302.

## FACTS

*Paradise's business*

9.      Paradise designs, creates, contracts for manufacture and sells children's toys, including figurines, dolls and accessories.  Paradise invests substantial time, effort and expense in researching, developing, designing, creating and marketing its products.

10.     Part of the development process involves purchasing and examining samples of goods sold in the market.  This enables Paradise to assess feasibility of a product, to identify unfilled niches and to obtain ideas for new products.

11.     Paradise sells dolls and action figures under a number of different brand names, including "Pocket Prehistorics," "Adventure Girlz," "Paradise Horses," "Paradise Poz-ables" and "Be My Girl."  The "Be My Girl" line is a collection of different 18" tall dolls, fashions, vehicles, furniture and accessories.  Paradise's line includes both the dolls and accessories for the dolls.

822970v1

12.     The product development process for each of these lines includes extensive market research and design work, which usually includes purchasing and examining products in the market, in order to assess the state of the market and evaluate the competition.

13.     Paradise also supplies private label goods for large stores.  In particular, Paradise is a participating vendor in Wal-Mart's "My Life As" private label doll program.

*QTI's business*

14.     QTI is located in Stroudsburg, PA.  On information and belief, it manufactures children's toys and accessories, including accessories for American Girl 18" dolls.  Much of QTI's product line apparently is copied directly from American Girl's catalog, as shown in Exhibit A hereto.

15.     On information and belief, QTI develops its products in a manner similar to the way Paradise develops its products, by (among other things) researching what is available in the market. On information and belief, portions of the QTI "Bake Shoppe" and its accessories were copied from products created by artists Jenny Holiday and Aaron Nieradka of Everyday is a Holiday, a company located in New Jersey.

16.     The QTI accessories for 18" dolls compete with numerous other companies' lines of accessories for 18" dolls.  These include various food-related toy items (including toy baked goods), lemonade stands, snack stands and bakery shops.  All these items must of necessity be of similar sizes and shapes in order to (a) be recognizable and (b) fit appropriately to 18" dolls.

17.     On information and belief, QTI sells its goods in its store in Stroudsburg, on its own website and through Amazon.com.

822970v1

*Creation of Paradise's Snack Stand*

18.     In or about the summer of 2013, the principal of Paradise, Amy Pennington, saw a lemonade stand that her daughter had created, and came up with the idea of developing a snack stand for Wal-Mart to market under its "My Life As" private label.

19.     Paradise's creative team, led by Kelli Sorrentino, commenced research by locating and purchasing a wide variety of similar types of toy food stands from American Girl, Etsy, QTI, Fortune Toys, Mattel, a number of sellers on eBay, and FAO Schwarz.

20.     The QTI sample that Paradise purchased was called "Bake Shoppe." It consisted of several pieces: a bakery shop, a cash register and wood signs with pegs. Paradise also purchased separately from QTI a set of toy cookies and a set of toy cupcakes, for a total of three purchases. The Bake Shoppe is similar in many respects to other toy food stands manufactured by other companies, including: Mattel, American Girl - Kanani's Shave Ice Stand; Mattel, American Girl MYAG CAMPUS SNACK CART Concession Stand; Mattel, Barbie Malibu Avenue; Mattel, Barbie Bakery; Mattel, Barbie Scoop 'N Swirly Ice Cream Shop Playset; Mattel, Barbie Hot Dog Stand; FAO Schwartz Wooden Bake Shoppe; FAO Schwarz Wooden Play Kitchen Bake Shoppe; Gloria Dollhouse Furnitures Supermarket with Food Accessories Play Set; Calico Bakery; Cardboard-Lemonade-Stand; Tomy Bake Shop; and Mother Garden Strawberry Bakery Kitchen Set.

21.     After expenditure of time, effort and expense by Paradise's' designers, Paradise completed a prototype snack stand and was ready show it to Wal-Mart as of October 1, 2013. It was based on original work by Paradise's design staff, inspired by real food items as well as various elements of most of the samples that Paradise had purchased during its market research, including but not limited to the QTI "Bake Shoppe." The Paradise "18" Snack Stand" was an all-inclusive play set that included a plastic snack stand with a functional drawer, signage, cup cakes, cookies, baking tray, milk shakes, lemonade, cash register, play money and tablecloths.

22.     After several subsequent meetings, Wal-Mart advised Paradise that it would buy the 18" Snack Stand for the Fall 2014 season.  Paradise arranged for manufacture overseas and for shipment to the United States for the Fall and Holiday 2014 selling season.  The 18" Snack Stand appeared in Wal-Mart stores under Wal-Mart's "My Life As" private label starting on or around September 1, 2014.

**QTI begins its harassment campaign**

23.     Shortly after Labor Day 2014, QTI's principal, Joann Cartiglia, contacted Wal-Mart to demand that they cease selling the 18" Snack Stand on grounds that it is a copy of QTI's Bake Shoppe.

24.     Cartiglia also sought out and obtained press and television coverage, primarily in Northeastern Pennsylvania, in which she claimed that the 18" Snack Stand was a copy of QTI's Bake Shoppe.  The Associated Press also ran the story nationally.

25.     After Cartiglia learned that Paradise had created and sold to Wal-Mart the 18" Snack Stand, she publicly accused Paradise of pirating her goods.  She continued her campaign against Wal-Mart and Paradise on QTI's Facebook page.  Notably, whenever any comments were made on QTI's Facebook page noting that the design of her Bake Shoppe was common and unremarkable, had likely been copied from others or was not the same as Paradise's 18" Snack Stand, Cartiglia or someone acting on her behalf deleted such comments.

26.     Among other things, Cartiglia conceded in the comments on her Facebook page that she had been advised that QTI had no legitimate legal claim for the alleged "copying," but that she was hoping to shame Wal-Mart into doing the "right thing."

27.     In a transparent but misleading effort to garner sympathy from her followers, Cartig-lia posted on QTI's Facebook page what was presented as a side-by-side comparison of the two pro-

ducts – QTI's Bake Shoppe and Paradise's 18" Snack Stand.  But in reality, she had placed the 18" Snack Stand in front of the Bake Shoppe to block the leftmost roughly 4" of the Bake Shoppe.  The 18" Snack Stand is less than nine inches wide, but the Bake Shoppe is about 50% wider – a bit more than 13" wide (they are of approximately equal height).  By positioning the products this way, Cartiglia apparently – and apparently successfully – misled QTI's followers into believing the two products are more alike than they actually are.  A copy of this misleading photograph is annexed as Exhibit B.  A true side-by-side photograph is annexed as Exhibit C.

28.      As of the time of the press exposure of the dispute in September 2014, QTI neither had obtained nor, on information and belief, had even filed for, a copyright registration from the Copyright Office.

29.      On information and belief, QTI's filing with the Copyright Office did not disclose to the Copyright Office that much of the Bake Shoppe design was based on others' products and artwork.

*Cartiglia's outrageous tortious behavior*

30.      The 2015 New York Toy Fair was held at the Javits Convention Center during February 14-17, 2015.  Paradise displayed at a booth at the Toy Fair.  QTI displayed a booth at the Toy Fair as well.

31.      On or about February 15, 2015, Cartiglia appeared at the Paradise booth at the Toy Fair and began to disturb the displays, while loudly proclaiming that Paradise had stolen her ideas and were a bunch of thieves.  Several buyers – potential or actual customers – were present when Cartiglia created the disturbance.  On information and belief, Cartiglia deliberately created the disturbance in order to discourage prospective customers from doing business with Paradise.

32.     Plaintiff Aguero, a Paradise employee, approached Cartiglia and requested that Cartiglia stop ruining the displays and cease making a disturbance.  She also explained to Cartiglia that Toy Fair rules prohibited exhibiters from entering other exhibiters' booths without an invitation.

33.     Cartiglia responded to Aguero's verbal requests by physically shoving Aguero and abusing her verbally.  Numerous persons were present to observe Cartiglia's attack.  Security was notified, and put on notice to make more frequent checks at Paradise's booth in order to deter Cartiglia from repeating her harassment.  In addition, security advised Paradise that security personnel had visited QTI's booth to inform Cartiglia that she should not approach Paradise's booth.

34.     Aguero suffered physical and emotional injury as a result of Cartiglia's outrageous behavior.

*QTI's threats*

35.     On information and belief, on February 18, 2015, the Copyright Office issued a Certificate of Registration to QTI for a sculpture called "Interchangeable Shoppe for 18" Dolls." The registration number is VA 1-942-946.

36.     On or about March 16, 2015, QTI threatened to sue Paradise and Wal-Mart if they did not offer some form of capitulation by March 30, 2015.  QTI apparently claims rights under both the Copyright Act and the Lanham Act, as well as New York's General Business Law § 359 [sic] and principles of unjust enrichment.

## First Claim for Relief
### (Declaratory Judgment)

37.     Plaintiff Paradise incorporates the foregoing allegations by reference.

7

38.     A dispute exists between Paradise and QTI regarding QTI's claim that Paradise's 18" Snack Stand infringes QTI's copyright in its "Interchangeable Shoppe for 18" Dolls."

39.     Paradise's 18" Snack Stand and QTI's "Interchangeable Shoppe for 18" Dolls" are not substantially similar as that term is used for purposes of copyright.

40.     Any features of the 18" Snack Stand that may be arguably similar to corresponding features of QTI's "Interchangeable Shoppe for 18" Dolls" are not protectable, or are protectable only for virtually exact copying.

41.     The Court should declare pursuant to 28 USC § 2201 that Paradise's 18" Snack Stand, and each part of it, does not infringe QTI's copyright for "Interchangeable Shoppe for 18" Dolls" or any part thereof.

42.     QTI's claim of infringement is objectively unreasonable.

43.     Paradise has no adequate remedy at law.


## Second Claim for Relief
### (Declaratory Judgment)

44.     Plaintiff Paradise incorporates the foregoing allegations by reference.

45.     The appearance of QTI's Bake Shoppe and of its associated accessories is not indicative of source and cannot possibly have secondary meaning.

46.     The size, shape and configuration of the Bake Shoppe and associated accessories are dictated largely by their function, which is to provide a play milieu to accompany 18" dolls.

47.     Insofar as portions of Paradise's 18" Snack Stand may arguably be similar to QTI's Bake Shoppe, such similarities are the result of the similar functions of the two toys, or are generic in appearance.  In all other respects the two sets of toys are utterly different or any resemblances are *de minimus*.

8

48.     A dispute exists between Paradise and QTI concerning QTI's false claims of infringement.

49.     The Court should declare pursuant to 28 USC § 2201 that (a) Paradise's 18" Snack Stand, and each part of it, does not infringe any rights of QTI under the Lanham Act; (b) any similarities between QTI's Bake Shoppe and Paradise's are based on unprotectable elements.

50.     QTI's baseless accusations of infringement make this an exceptional case under 28 USC § 1117(a)(3).

51.     Paradise has no adequate remedy at law.

## Third Claim for Relief
### (Battery)

52.     Plaintiff Aguero incorporates the foregoing allegations by reference.

53.     Cartiglia violently and viciously struck Aguero without justification, causing Aguero physical and emotional injury.

54.     Cartiglia should be required to pay compensatory damages of no less than $200,000 to Aguero, together with punitive damages to punish the malefactor for her vicious, unlawful behavior.

## Fourth Claim for Relief
### (Unfair Competition)

55.     Plaintiff Paradise incorporates the foregoing allegations by reference.

56.     Cartiglia created a large disturbance at Paradise's booth in the New York Toy Fair as part of an effort to discourage potential customers from dealing with Paradise and to distract Paradise's personnel from selling Paradise's goods.  This illegitimate strategy included not just vocal

822970v1

outbursts and false statements but also physical attacks on the displays in Paradise's booth and a physical attack upon a Paradise employee, Aguero.

57.     Cartiglia's actions on behalf of QTI constitute unfair competition under New York law.

58.     Paradise's business has been injured as a result of Cartiglia's attacks.  QTI should be compelled to pay damages in an amount to be determined at trial, but no less than $200,000, together with punitive damages.

WHEREFORE, plaintiffs respectfully request that the Court enter judgment in their favor as follows:

A.     On the first claim for relief, declaring pursuant to 28 USC § 2201 that Paradise's 18" Snack Stand, and each part of it, does not infringe QTI's copyright for "Interchangeable Shoppe for 18" Dolls" or any part thereof;

B.     On the second claim for relief, pursuant to 28 USC § 2201 that (a) Paradise's 18" Snack Stand, and each part of it, does not infringe any rights of QTI under the Lanham Act; (b) any similarities between QTI's Bake Shoppe and Paradise's are based on unprotectable elements;

C.     On the third claim for relief, damages in an amount to be determined at trial, including punitive damages to punish Cartiglia for her outrageous behavior;

D.     On the fourth claim for relief, damages in an amount to be determined at trial, including punitive damages to punish defendants for their outrageous behavior;

E.     Costs, interests and attorneys' fees as permitted by law; and

822970v1

      F.      Such other and further relief as may seem to the Court just and proper.

Dated: New York, New York
       March 26, 2015

                    Respectfully submitted,

                    WILK AUSLANDER LLP

                    By: _____
                       Stuart M. Riback
                    1515 Broadway
                    New York, New York  10036
                    (212) 981-2300

                    *Attorneys for Plaintiffs*

# EXHIBIT A

**Queen's Treasure's**          **American Girl**



822970v1

# EXHIBIT B



822970v1

# EXHIBIT C

822970v1



822970v1

17